IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| AMY ANASTASION,<br><br>  Plaintiff,<br><br><br><br><br><br><br><br><br>  vs.<br><br><br>CREDIT SERVICE OF LOGAN, INC. dba ALLIED COLLECTION SERVICE, BRITTANY APARTMENTS, L.L.C., and DOES 1-10,<br><br>  Defendant. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br><br><br><br>Case No. 2:09-CV-81 TS |

The Court has before it Defendant Credit Service of Logan, Inc. dba Allied Collection Service's Motion for Summary Judgment[1] and Plaintiff Amy Anastasion's Motion for Partial Summary Judgment.[2]  Having considered the parties' motions and their respective memoranda, the Court enters the following ruling.

[1]Docket No. 38.

[2]Docket No. 67.

1

I.  BACKGROUND

A.     UNDISPUTED FACTS

In January of 2004, Plaintiff Amy Anastasion ("Plaintiff") leased an apartment from Defendant Brittany Apartments, LLC ("Brittany").  Plaintiff failed to pay rent and Brittany brought eviction proceedings against Plaintiff in the Second District Court for the State of Utah. On May 12, 2004, Brittany received a judgment for eviction and damages against Plaintiff Amy Anastasion in the Second District Court, State of Utah.

In September of 2005, Brittany assigned the collection of the damages awarded Brittany and other alleged charges to Defendant Credit Service of Logan, Inc. dba Allied Collection Service ("Allied").  Allied began collecting on the account and commenced reporting Plaintiff's account with Allied as "open" to the Collection Reporting Agencies ("CRAs") on October 21, 2005.

On April 11, 2006, Plaintiff filed a motion for satisfaction of judgment with the state court along with a copy of Plaintiff's check no. 1040 for $698.44 and a copy of her bank statement which indicated there were sufficient funds to clear the check.  The state court judge signed the order granting the satisfaction of judgment on April 21, 2006.

On April 27, 2006, less than four weeks from the date of the check, Plaintiff placed a stop payment on check no. 1040.   While the motive behind Allied's actions after receiving this check are disputed, it appears undisputed that after Brittany informed Allied of the satisfaction of judgment, Allied separated Plaintiff's alleged post-judgment charges from her judgment balance. To this end, Allied created a new collection account for the outstanding balance Plaintiff owed for the alleged post-judgment charges.  Allied received Plaintiff's check no. 1040 on May 2,

2006, and immediately queued its electronic reporting system to report Plaintiff's original collection account as "paid."  Once Allied learned of the stop payment placed on check no.1040, Allied queued its electronic reporting system to report the original collection account as open. Allied also began reporting the new post-judgment account as open in June of 2006.

The parties dispute when Allied stopped reporting to the CRAs the original collection account as open, but it appears undisputed that Allied was reporting at least one account through September of 2008.  In March, July, and October of 2007, Plaintiff sent written disputes to the CRAs.  Allied responded to each of these written disputes.  The parties dispute the adequacy of these responses and the investigation related to these responses.

B.    PROCEDURAL HISTORY

Plaintiff filed her Complaint on March 6, 2008.  Therein, Plaintiff alleges that Defendant Allied engaged in conduct that violated both federal and state law.[3]  Plaintiff alleges that Defendant Allied (1) violated the Fair Debt Collection Practices Act [4] ("FDCPA"); (2) violated the Fair Credit Reporting Act[5] ("FCRA"); (3) violated the Utah Consumer Sales Practice Act[6] ("UCSPA"); (4) invaded Plaintiff's privacy; and (5) defamed Plaintiff.

Defendant Allied moved for summary judgment on April 19, 2010, on all claims alleged against it.  Specifically, Allied argues that (1) Plaintiff's FDCPA claims are time-barred and, even if they are not, no violation of the FDCPA occurred; (2) Plaintiff's FCRA claims fail as a

---

[3]Docket No. 1.

[4]15 U.S.C. § 1692.

[5]15 U.S.C. § 1681s-2b.

[6]Utah Code. Ann. § 13-11-4.

matter of law because Allied conducted a reasonable investigation of Plaintiff's disputes; and (3) Plaintiff's remaining state law claims are preempted by the Fair Credit Reporting Act.[7]

Plaintiff filed her motion for partial summary judgment on July 8, 2010.  Therein, Plaintiff argues she is entitled to summary judgment on her FCRA and FDCPA claims because the satisfaction of judgment eliminated all debts associated with her tenancy at Brittany Apartments and Allied's investigations upon receipt of Plaintiff's disputes were unreasonable.

## II.  DISCUSSION

### A.    MOTION FOR SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[8]  In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[9]  The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[10]  In opposing a motion for summary judgment, "[t]he nonmoving party 'may not rest upon the mere allegations or denials of his pleadings' to avoid summary judgment."

---

[7]*See* Docket No. 38.

[8]*See* Fed.R.Civ.P. 56(c).

[9]*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[10]*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

Instead, the non-moving party must provide sufficient evidence "such that a reasonable jury could return a verdict for the non-moving party."[11]

B.     FDCPA CLAIMS

    *1.     FDCPA Statute of Limitations*

The FDCPA provides that "[a]n action to enforce any liability created by this subchapter may be brought . . . within one year from the date on which the violation occurs."[12]  Defendant argues that, as Plaintiff filed this action on March 6, 2008, any alleged violations of the FDCPA which occurred prior to March 6, 2007, are time-barred.  In response, Plaintiff merely identifies allegations which occurred after March 6, 2007.  The Court, therefore, finds that all collection activities that predate March 6, 2007, are time-barred.  All violations alleged to have occurred prior to March 6, 2007, are dismissed in favor of Defendant.

    *2.     The Satisfaction of Judgment and the Post-Judgment Debt*

Plaintiff's remaining FDCPA claims hinge on the operative effect of Plaintiff's state court satisfaction of judgment and the preclusive effect of Brittany's unlawful detainer action against Plaintiff.  The Court will address each of these issues in turn.

       *i.     The Post-Judgment Debt*

Plaintiff argues both in opposition to Allied's motion and in her own motion that once Brittany prevailed on its petition for unlawful detainer, Brittany was precluded from asserting any additional charges associated with Plaintiff's tenancy at the Brittany Apartments.  As such,

---

[11]*Cooperman v. David*, 214 F.3d 1162, 1164 (10th Cir. 2000).

[12]18 U.S.C. § 1692k(d).

Plaintiff argues that Brittany's assertion of post-judgment charges against her are invalid and Allied's collection efforts associated with these charges violate the FDCPA.

Plaintiff's preclusion argument is based both on the text of Utah's unlawful detainer statute and Utah case law concerning the preclusive effect of a final judgment on the merits. Utah's unlawful detainer statute in 2004 provided that in awarding a petition for eviction, the court "shall also assess the damages resulting to the plaintiff from . . . waste of the premises during the defendant's tenancy; if waste is alleged in the complaint and proved at trial[.]"[13] Plaintiff reads this statute as a clear statutory mandate requiring a petitioner to raise all damage-related claims which resulted from the tenancy in the petition for unlawful detainer, or else they are precluded from being raised in a later action.[14]  Plaintiff further asserts Brittany's unlawful detainer judgment against her forfeited her lease and declared her tenancy terminated—which termination precluded accrual of further unpaid damages or rent as a result of her tenancy. Plaintiff's assertion is based upon Utah's 2004 unlawful detainer statute, which provided that "[i]f the proceeding is for unlawful detainer . . . after default in the payment of rent, the judgment shall also declare the forfeiture of the lease or agreement."[15]  Thus, reading these two provisions in tandem, Plaintiff argues that Brittany's 2004 unlawful detainer judgment against her terminated her lease and any obligations thereunder and further precluded Brittany from asserting any damages related to her occupancy in a later proceeding.

----

[13]Utah Code Ann. § 78-36-10 (2004).

[14]*See* Docket No. 68, at 2-3.

[15]Utah Code Ann. § 78-36-10 (2004).

Plaintiff further argues that this result is mandated by Utah case law concerning the preclusive effect of a final judgment on the merits. As Utah courts have repeatedly held, "[w]ith rare exception, when a court with proper jurisdiction enters a final judgment, including a default judgment, that judgment can only be attacked on direct appeal."[16] Thus, Plaintiff argues, Brittany was precluded from pursuing later accrued damages and rents against her without directly appealing or requesting the state court reconsider its prior judgment.

Allied, in both its own motion and in opposition to Plaintiff's motion, argues that a plain reading of the state court's unlawful detainer judgment shows that the judgment did not release Plaintiff from her obligations under the lease. In its judgment, the state court ordered possession of the premises be returned to Brittany and that "[a]ll rights to occupancy through defendant(s) arising from the rental agreement are terminated."[17]  The state court then entered an award of unpaid rent, treble damages, court costs, and attorney's fees to Brittany. Allied argues that although Utah's unlawful detainer statute states that "the judgment shall also declare the forfeiture of the lease or agreement," the statute itself does not state that entry of judgment automatically forfeits the lease.

Allied agrees that Brittany could have returned to state court to have its unlawful detainer judgment augmented by the charges that accrued to Plaintiff's account outside of the eviction action. Allied argues, however, that Plaintiff nonetheless owed Brittany a debt for post-judgment charges even though that debt was never reduced to a judgment.

---

[16]*State v. Hamilton*, 70 P.3d 111, 118 (Utah 2003).

[17]Docket No. 39, Ex. 2.

Although neither party has identified any case law directly on point, the Court finds Utah case law related to unlawful detainer and tenant/landlord relations helpful.  In *Voyles v. Straka*,[18] the Utah Supreme Court faced the issue of whether a separate action for past-due rent was barred once a party had prevailed in an unlawful detainer action.[19]  There, the court noted that "[w]hether the former judgment constitutes a bar to the maintenance of the other action depends upon the identity of the causes of action sued upon in the two suits."[20]  In evaluating the prior unlawful detainer action, the court noted that "rent was not claimed or adjudged in the possessory action."[21]  Because of this, the court found that "[t]he former judgment cannot therefore operate as a bar to the action for rent upon the ground that the same matter was formerly adjudicated."[22] In other words, because Plaintiff's possessory interest in the property was the only issue actually litigated in the prior action, Plaintiff's interest in past-due rent could not be barred in a later action.  As the court noted, the language of the unlawful detainer statute that "'judgment shall be rendered . . . for the rent,' etc., is only applicable when rent is claimed, for it would be improper in any case to award a judgment for what is not demanded."[23]  Thus, the court found that the separate action for damages could be maintained.

---

[18]292 P. 913 (Utah 1930).

[19]*Id.*

[20]*Id.*

[21]*Id.* at 914.

[22]*Id.*

[23]*Id.*

In comparing *Voyles* to the case at hand, it is noteworthy that past-due rent was actually demanded by and awarded to Brittany in its unlawful detainer action.[24]   Thus, unlike the Plaintiff's unlawful detainer action in *Voyles*, Brittany's unlawful detainer action concerned more than just Brittany's possessory interest in the property.   Brittany received a full and fair opportunity to litigate the issue of rent and damages and received an award of both in the prior action.

Allied argues that even if it did already litigate the issue of rent and damages, because the state court judgment did not declare the lease forfeited, Plaintiff remained liable for the accrual of rent and damages until the property was re-let.   Allied's argument appears to imply that, even though Brittany had resorted to a judicial remedy concerning this property, it could nonetheless continue the self-help remedy of independent debt collection.   The Utah Supreme Court's decision in *Reid v. Mutual Omaha Ins. Co.*,[25] however, cuts against this argument.   In *Reid*, the Utah Supreme Court adopted the "retained jurisdiction" approach, which "allows the landlord to obtain judgment soon after the tenant's breach; but rather than requiring the institution of an entirely new suit (or suits) to collect future rents, it permits the court to retain jurisdiction over the parties and the subject matter and enter new damage awards as additional rents accrue."[26]

The court outlined the implementation of this approach:

When a landlord's action for breach of a lease is tried before the expiration of the lease term and the finder of fact determines that the tenant has breached the lease, the amount awarded should represent only those rents that have come due as of

---

[24]Docket No. 29, at Ex. 2.

[25]776 P.2d 896 (Utah 1989).

[26]*Id.* at 908.

> the time of trial.  This judgment will be immediately enforceable.  Rents accruing after the trial, on the other hand, may be recovered through what will amount to rather brief supplemental proceedings.  To provide this remedy, the trial court should retain jurisdiction of the underlying action.  After additional unpaid rents have accrued, the landlord may return to the court, without the risks and burdens that attend the filing of a new action, for a simple determination of additional losses suffered through the date of the supplemental proceedings and whether the landlord has fulfilled its ongoing duty to mitigate.  Under the law-of-the-case doctrine, the initial determination of the tenant's liability would govern in any supplemental proceedings.[27]

Thus, under *Reid*, once a party resorts to judicial proceedings to adjudicate past-due rent, the prevailing party is to return to the court for an adjustment of the judgment to include later-accrued rent and/or damages.  Once the party resorts to judicial proceedings, the ability to later pursue related additional damages through self-help is foreclosed.

In light of the foregoing, it appears that Brittany's alleged post-judgment charges were invalid until Brittany received an adjustment from the state court.  This conclusion is not altered by Allied's assertion that the state court judgment never declared the lease forfeited.  While this may be true, this does not alter the fact that Brittany resorted to a judicial remedy and therefore must operate within the rules concerning final judgments.

Allied's final argument that the efforts to collect the post-judgment charges did not violate the FDCPA is based upon the FDCPA's definition of debt, which provides:

> The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family,

---

[27]*Id.* at 908-09.

or household purposes, whether or not such obligation has been reduced to judgment.[28]

Allied argues that since this definition explicitly states that the obligation need not be reduced to judgment, Brittany was excused from returning to court to augment its unlawful detainer judgment to include later rent. However, Allied's argument is contrary to well-settled principles of res judicata and the finality of judgments. It is doubtful that in this definition Congress intended to depart from the well-settled rules concerning final judgments on the merits.

The Court therefore finds that Brittany's alleged post-judgment charges were invalid. As the post-judgment charges were invalid, Allied's attempts to collect these post-judgment debts violated the FDCPA. Plaintiff is therefore entitled to summary judgment as to its FDCPA claims relating to the collection of the post-judgment debts. As Plaintiff has requested in her Complaint statutory and actual damages in an amount to be proven at trial, it will remain Plaintiff's burden to demonstrate the damages associated with these claims.

ii.    *The Satisfaction of Judgment*

Defendant Allied argues that Plaintiff's check no. 1040 which Plaintiff directed her bank to not honor created a debt obligation which Allied had a right to collect. Therefore, Allied argues, even if this Court were to find that the post-judgment charges were invalid, Allied's efforts to collect the face amount of check no. 1040 were in line with its duties under the FDCPA. Plaintiff argues that the state court's satisfaction of judgment barred Defendant Allied from further collecting on the judgment until Brittany or Allied had the state court alter its prior

---

[28]16 U.S.C. § 1692a(5).

order.  While the Court does not condone Plaintiff's actions, the Court notes that what Allied

effectively seeks is a collateral review of the state court satisfaction of judgment.  The Court

finds this improper.  Under the well-settled principles of the finality of judgment discussed

above, the state court's satisfaction of judgment is the final word on the matter.  Brittany or

Allied were obligated to seek direct review of the satisfaction of judgment before it continued

collection efforts on the judgment amount.

Allied represents to the Court that it ceased all efforts to collect on check no. 1040 in

October of 2006, well before the one year statute of limitations.  Plaintiff, however, calls the

Court's attention to a July 26, 2007 letter allegedly sent by Allied and notes from Allied's own

records that suggest that Allied continued collection efforts on this account through July of

2007.[29]  The Court finds that this raises a genuine issue of material fact that precludes an entry of

summary judgment.  Therefore, the parties' respective motions for summary judgment which

relate to the collection of check no. 1040 and the original unlawful detainer judgment must be

denied.

C.      FCRA CLAIMS

Plaintiff alleges that Allied violated 15 U.S.C. § 1681s-2(b) of the FCRA.  Under this

subsection, after a person who furnishes information to the CRAs receives notice from a CRA of

a dispute concerning the accuracy or completeness of information that person provided to the

CRA, that person shall: "(A) conduct an investigation with respect to the disputed information;

---

[29]*See* Docket No. 68.

12

(B) review all relevant information provided by the consumer reporting agency . . .; (C) report the results of the investigation to the consumer reporting agency;" and if the investigation reveals any error, report and rectify the error.[30]

In Allied's Motion for Summary Judgment, Allied correctly notes that the FCRA itself does not provide any guidance as to the contours of this investigation. Courts interpreting this section have held that upon receiving a notice of dispute from a credit reporting agency, furnishers must "conduct a reasonable investigation of their records to determine whether the disputed information can be verified."[31] As the Ninth Circuit explained, "the reasonableness of an investigation depends on the facts of the particular case, most importantly the CRA's description of the dispute in its notice."[32]

"The burden of showing the investigation was unreasonable is on the plaintiff."[33] As the First Circuit explained, underlying a plaintiff's burden to demonstrate the unreasonableness of a furnisher's investigation is a further burden upon the plaintiff to demonstrate "actual inaccuracy in suits against furnishers."[34] As "[t]he FCRA is intended to protect consumers against the

---

[30]15 U.S.C. § 1681s-2(b).

[31]*Johnson v. MBNA Am. Banm, NA*, 357 F.3d 426, 431 (4th Cir. 2004); *see also Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009) (noting that a furnisher's investigation under § 1681s-2(b)(1) must be reasonable).

[32]*Gorman*, 584 F.3d at 1160.

[33]*Chiang v. Verizon New England Inc.*, 595 F.3d 26, 36 (1st Cir. 2010).

[34]*Id.*

compilation and dissemination of *inaccurate* information"[35] a plaintiff seeking relief under the FCRA must necessarily demonstrate the factual inaccuracy of the reported information.  Thus, summary judgment is appropriate when a plaintiff fails to "raise a genuine issue of material fact that the investigation was unreasonable" or fails "to show any actual inaccuracies [which] could have been found through reasonable investigation."[36]

As the Seventh Circuit has previously held,

The determination of the "reasonableness" of the defendant's procedures, like other questions concerning the application of a legal standard to given facts (notably negligence, a failure to exercise reasonable care), is treated as a factual question even when the underlying facts are undisputed. It therefore cannot be resolved on summary judgment unless the reasonableness or unreasonableness of the procedures is beyond question . . . .[37]

Allied alleges that its investigations in responding to Plaintiff's disputes were reasonable beyond question and therefore entitle it to summary judgment.  Allied asserts that upon receipt of each dispute, it verified that Plaintiff's account had an outstanding balance and responded accordingly to the CRA.  Plaintiff counters that the investigations were undoubtedly unreasonable because Allied did nothing more than check its own records to investigate Plaintiff's disputes.  Plaintiff argues that Allied had a duty to verify the accuracy of the amounts provided Allied by Brittany, which requires Allied to look beyond its own records.

---

[35] *Id.* at 37-38 (internal quotation marks and citation omitted) (emphasis in original).

[36] *Id.* at 38.

[37] *Crabill v. Trans Union, LLC*, 259 F.3d 662 (7th Cir. 2001).

The Court finds that Plaintiff has failed to carry her burden to demonstrate that Allied's efforts were unreasonable.  Once Allied received notice of the dispute, Allied evaluated the response against the information contained in its records concerning Plaintiff's account.  Each time, Allied found that the information contained in Plaintiff's dispute was inaccurate according to its records and reported the results of its search to the CRA.  Moreover, the Court notes that Plaintiff has not presented any case law to support its assertion of a creditor's duty to look beyond its own records.  Thus, the Court finds that such efforts were reasonable in light of the undisputed facts presented to the Court.  Therefore, the Court will grant Defendant Allied's motion for summary judgment and deny Plaintiff's motion for summary judgment on the FCRA claims.

D.      STATE LAW CLAIMS

Defendant argues that Plaintiff's state law claims are preempted under the FCRA. Plaintiff counters that her state law claims are not preempted under the FCRA because they are supplemental to her FDCPA claims and are therefore evaluated under the FDCPA's less stringent preemption clause.  In evaluating Plaintiff's Complaint, Plaintiff's allegations that Defendant violated the Utah Consumer Sales Practice Act and that Defendant defamed her concern the same subject matter as the FCRA.  Therefore, the Court finds that these two claims are preempted under the FCRA's strict preemption clause.[38]  Plaintiff's claim for invasion of privacy, however, alleges conduct outside of the subject matter of the FCRA.  Thus, the Court finds that the

---

[38]*See Pinson v. Equifax Credit Information Services, Inc.*, 316 Fed.Appx. 744 (10th Cir. 2009).

15

FCRA's preemption clause does not apply to this claim.  Therefore, the Court will grant

Defendant's Motion for Summary Judgment as to Counts III (violation of the Utah Consumer

Sales Practice Act) and V (defamation) of Plaintiff's Complaint and deny the motion as to Count

IV (invasion of privacy).

## III.  CONCLUSION

Based on the foregoing, it is therefore

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 38) is

GRANTED as to its request for dismissal of all claims arising before March 6, 2007, and

dismissal of Counts III and V of Plaintiff's state law claims and DENIED as to all other claims.

It is further

ORDERED that Plaintiff's Motion for Partial Summary Judgment (Docket No. 67) is

GRANTED as to her FDCPA claims and DENIED as to all others.

The Court will refer this matter to settlement by separate order.

DATED   November 16, 2010.

_____

TED STEWART
United States District Judge