IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| AMY ANASTASION,<br><br>　　　Plaintiffs,<br><br><br><br>vs.<br><br><br>CREDIT SERVICE OF LOGAN, INC. dba ALLIED COLLECTION SERVICE, BRITTANY APARTMENTS, L.L.C., DOES 1 through 10,<br><br>　　　Defendants. | MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND PLAINTIFF'S MOTION TO STRIKE BILL OF COSTS<br><br><br><br><br>Case No. 2:08-CV-180 TS |

　　　This matter is before the Court on Plaintiff's Motion for Attorney's Fees[1] and Plaintiff's Motion to Strike Bill of Costs.[2]

I. BACKGROUND

　　　The case arises out of interactions between Plaintiff Amy Anastasion, Defendant Credit Service of Logan ("CSL"), and former Defendant Brittany Apartments ("Brittany"). Plaintiff filed suit on March 6, 2008, setting forth in her Complaint[3] claims for violations of the Fair Debt

---

[1] Docket No. 253.

[2] Docket No. 260.

[3] Docket No. 1.

1

Collection Practices Act ("FDCPA"), the Fair Credit Reporting Act ("FCRA"), the Utah Consumer Sales Practices Act ("UCSPA"), invasion of privacy, and defamation.  On October 27, 2009, CSL and Brittany served Plaintiff an offer of judgment for $8,000 "plus reasonable attorney's fees and costs incurred through the date of the offer."[4]  Plaintiff did not accept the offer.  On April 28, 2010, Plaintiff entered into a settlement agreement with Brittany whereby Brittany paid Plaintiff $25,000 in exchange for a release of all claims.  Plaintiff offered to settle her claims against CSL alone on a number of occasions, for the following amounts:

| Date     | Amount for claims | Amount for attorney's fees | Amount for costs |
|----------|-------------------|----------------------------|------------------|
| 2/3/10   | $35,000           | $20,244.80                 |                  |
| 6/18/10  | $75,000           | $35,267.23                 | Approx. $8,700   |
| 12/21/10 | $90,000           | $77,000.00                 | Approx. $13,700  |

Defendant did not accept any of these offers, and Plaintiff prevailed at trial on her claim for violation of the FDCPA, with the jury awarding $1,750 in actual damages and $800 in statutory damages.[5]  Plaintiff now seeks, pursuant to 15 U.S.C. § 1692k(a)(3), attorney's fees of $124,559.85 and costs of $10,348.15.  Defendant argues that such a large fee is unreasonable in light of the $2,550 damage award and that Plaintiff should be required under Rule 68 to pay all costs incurred after the offer of judgment, since CSL and Brittany's $8,000 offer exceeded the $2,550 ultimately recovered.  To support this argument, Defendant filed a bill of costs, which Plaintiff requests that the Court strike.  The Court will first address costs, then attorney's fees.

---

[4] Docket No. 258, at iii.

[5] Docket No. 243, at 1-2.

II. COSTS

A.     LEGAL STANDARD

Under the FDCPA, a prevailing plaintiff is usually entitled to the costs of the action.[6] However, if an offer made pursuant to Fed. R. Civ. P. 68 is not accepted and "the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made."

B.     ANALYSIS

Both parties have moved for costs, with Plaintiff arguing that she should receive costs as the prevailing party and Defendant arguing that Plaintiff should be responsible for costs incurred after the October 2009 offer, per Rule 68.  Plaintiff argues that, while the $8,000 offer does exceed the $2,550 judgment, the offer of $8,000 plus costs and fees was a joint offer from both CSL and Brittany.

Defendant argues that its offer of judgment was actually for $31,554.95, as it was an offer for $8,000 "plus reasonable attorney's fees and costs incurred through the date of [the] offer" and Plaintiff had thus far incurred $641.60 in costs and $22,913.35 in attorney's fees.[7]  However, assuming Defendant's calculation of costs and fees is correct, Defendant is asking the Court to compare for Rule 68 purposes the $31,554.95 offer of judgment—which includes both costs and attorney's fees—with the $25,000 settlement and $2,550 jury verdict—which does not include costs and attorney's fees.  The statute expressly states that a debt collector who fails to comply with the FDCPA  "is liable . . . in an amount equal to the sum of" actual and statutory damages and "in the case of any successful action to enforce the foregoing liability, the costs of the action

---

[6] 15 U.S.C. § 1692k(a)(3); *see also* Fed. R. Civ. P. 54(b) ("Unless a federal statute, these rules, or a court order provides otherwise, costs . . . should be allowed to the prevailing party.").

[7] Docket No. 262, at 6.

3

together with a reasonable attorney's fee as determined by the court."[8] Therefore, the Court should not compare the jury verdict alone with the offer *plus* attorney's fees and costs. Similarly, a comparison of the $31,554.95 offer of judgment with the settlement, jury verdict, and plaintiff's costs and fees for the *entire* course of litigation would also be unreasonable. The Court will instead take instruction from the U.S. Supreme Court ruling in *Marek v. Chesny*. When facing a similar issue in a case brought under § 1983, the Court stated:

> Curiously, respondent also maintains that petitioners' settlement offer did not exceed the judgment obtained by respondent. In this regard, respondent notes that the $100,000 offer is not as great as the sum of the $60,000 in damages, $32,000 in preoffer costs, and $139,692.47 in claimed postoffer costs. This argument assumes, however, that postoffer costs should be included in the comparison. The Court of Appeals correctly recognized that postoffer costs merely offset part of the expense of continuing the litigation to trial, and should not be included in the calculus.[9]

Therefore, the *Marek* Court compared the initial offer of $100,000—which included costs and attorney's fees accrued to that point[10]—with both the damage award *and* the same preoffer costs and fees. Therefore, as the $31,554.95 offer of judgment does not exceed the sum of the $25,000 settlement, the $2,550 in damages, and the $23,554.85 in preoffer costs and fees (per Defendant's calculation), the Court finds that Defendant, rather than Plaintiff, will be liable for costs in this action.[11]

This finding is also supported by the Tenth Circuit's statement that "the ultimate purpose of Rule 68 [is] to promote the swift and effective resolution of a lawsuit" and therefore the

---

[8] 15 U.S.C. § 1692k(a)(3).

[9] *Marek v. Chesny*, 473 U.S. 1, 7 (1985).

[10] *Id.* at 3.

[11] The Court notes that it is not holding that the appropriate figure for preoffer costs and fees is $23,554.85; however, the ultimate determination of the correct amount will not change the outcome, as preoffer costs and fees are included in both calculations.

"primary concern is that the offeree must know what is being offered in order to be responsible for refusing the offer."[12] When CSL and Brittany together offered $8,000 to Plaintiff, they did not specify how much was offered from each party. After Plaintiff settled with Brittany alone, CSL was free to make a separate offer of judgment, which would have unambiguously established a figure with which the Court could compare the final judgment.

### III. ATTORNEY'S FEES

Plaintiff has also moved for attorney's fees under the FDCPA. Plaintiff's counsel, Ronald Ady, represents that he expended 642.59 hours during the course of litigation, and has chosen not to seek recovery for 172.04 of those hours. Plaintiff claims an hourly rate of $195 for the first 6.53 hours and then claims an hourly rate of $250 for the remaining 464.02 hours, asserting that "[t]he reasonable hourly rate for an attorney with Mr. Ady's experience in this type of litigation is $250.00 per hour."[13] 6.53 hours at $195 plus 464.02 hours at $250 gives a proposed calculation of $117,278.35. Plaintiff has also filed a supplemental declaration, detailing an additional 29.09 hours spent on post-trial matters. At $250 per hour, this adds an additional $7,272.50 to the proposed calculation for a total of $124,550.85.

Defendant objects to Plaintiff's Motion, arguing that: 1) Plaintiff's counsel fails to sufficiently document what hours were spent on unsuccessful claims, 2) Plaintiff fails to offer sufficient evidence for the rate, 3) Plaintiff's fee request is unreasonable and excessive in light of the minimal success achieved, 4) the Court must take into account Defendants' Rule 68 offer of judgment when determining reasonable attorney's fees, and 5) Plaintiff's counsel should not be rewarded for overvaluing the case.

---

[12] *Roska v. Sneddon*, 366 F. App'x 930, 939-40 (10th Cir. 2010) (unpublished) (quotations omitted).

[13] Docket No. 254, at 7.

A.      LEGAL STANDARD

15 U.S.C. § 1692k(a)(3) states that a prevailing plaintiff in an FDCPA action is to be awarded "the costs of the action, together with a reasonable attorney's fee as determined by the court." "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."[14] This calculation yields what is referred to as the "lodestar" figure.[15]

> The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.
>
> The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. In the private sector, "billing judgment" is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.
>
> The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the "results obtained." This factor is particularly crucial where a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief. In this situation two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award? . . .
>
> In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, even where the claims are brought against the same defendants . . . counsel's work on

---

[14] *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Although this case dealt with the provision of fees under § 1988, the Court stated that "[t]he standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Id.* at 433 n.7.

[15] *Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 157 F.3d 1243, 1249 (10th Cir. 1998).

one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved. The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.[16]

"A general reduction of hours claimed in order to achieve what the court determines to be a reasonable number is not an erroneous method, so long as there is sufficient reason for its use."[17] "In exercising their considerable discretion, within proper guidelines, district courts should above all be directed by the Supreme Court's caution that: '[fee shifting statutes] were not designed as a form of economic relief to improve the financial lot of attorneys.'"[18]

B.  ANALYSIS

Because Plaintiff prevailed on her FDCPA claim, an award of reasonable attorney's fees is mandatory. Although Plaintiff provides little support for the reasonability of the $250 per hour rate, Defendant does not provide evidence supporting a different rate and the Court has no reason to find that Plaintiff's rate is not reasonable. However, the Court finds that the $124,550.85 fee total claimed by Plaintiff is unreasonably high. Plaintiff achieved minimal success, prevailing on only one of five original claims and obtaining a jury verdict for $2,550 in damages. The Court recognizes that "attorney's fees awarded by district courts have frequently outrun the economic benefits ultimately obtained by successful litigants,"[19] and Plaintiff has cited to a number of

---

[16] *Hensley*, 461 U.S. at 433-35 (quotations omitted).

[17] *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1203 (10th Cir. 1986) (citing *Hensley*, 461 U.S. at 437).

[18] *Id.* at 1210 (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986)).

[19] *Evans v. Jeff D.*, 475 U.S. 717, 735 (1986).

cases brought under the FDCPA where fee awards were significantly higher than damages. However, the Court finds that the issues required to establish the sole claim on which Plaintiff prevailed were relatively straightforward and do not support the number of hours that Plaintiff claims. That these fees are unreasonably high is further demonstrated when comparing the $124,550.85 fee requested by Plaintiff with the $43,797.20 average award in the FDCPA cases cited to by Plaintiff.[20]

As the Tenth Circuit stated when upholding a district court's 77% reduction in the attorney's fees awarded to a successful FDCPA plaintiff, "counsel may have blown the case far out of proportion on the mistaken belief that it would yield a big judgment and, consequently, a very large fee."[21] In this case, much of the time spent both at trial and during pretrial litigation was for claims on which Plaintiff did not ultimately succeed, including significant testimony by Plaintiff's expert witness that was ultimately stricken. Furthermore, Plaintiff did not document what time was spent on many of the unsuccessful claims, making it impossible for the Court to precisely exclude that time. Therefore, the Court must reduce the award generally to account for the imprecise billing and recordkeeping.

For the reasons set forth above, the Court finds that the $117,278.35 proposed fee for prejudgment services claimed by Plaintiff is unreasonable for the one claim on which Plaintiff was successful. The Court will therefore reduce the prejudgment lodestar calculation by 1/2, for a total award of $58,639.18. The Court further finds that Plaintiff has adequately supported the 29.09 hours of post-judgment work performed and will award $7,272.50 for those hours.

---

[20] Averaging awards in cases cited in Plaintiff's Memorandum in Support, Docket No. 254, at 9-10 (considering only those resolved after January 2000).

[21] *Mares*, 801 F.2d at 1204.

IV. CONCLUSION

Based on the foregoing, it is hereby

ORDERED that Plaintiff's Motion for Attorney Fees (Docket No. 253) is GRANTED IN PART AND DENIED IN PART.  Defendant is ORDERED to pay $65,911.68 to Plaintiff for a reasonable attorney's fee.  It is further

ORDERED that Plaintiff's Motion to Strike Bill of Costs (Docket No. 260) is GRANTED.  The Clerk of the Court is directed to tax costs against Defendant.

DATED   April 26, 2012.

BY THE COURT:

_____
TED STEWART
United States District Judge